**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

*Bid Protest*

| | |
|---|---|
| BLUE & GOLD FLEET, L.P.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-0514<br>(Judge Futey) |

**INTERVENOR-APPLICANT'S MOTION TO TRANSFER CASE**

Pursuant to RCFC 40.1, Intervenor-applicant Hornblower Yachts, Inc. ("Hornblower"), hereby respectfully moves to transfer this matter to Judge Christine O.C. Miller based on the fact that both this case and the prior case presided over by Judge Miller (which is currently on appeal) "involve the same parties and are based on the same or similar claims." RCFC 40.2. In addition, both cases involve the same contract and solicitation for concession operations at Alcatraz Island. *Id.*

*Relationship to Blue & Gold Fleet, L.P. v. United States, Fed. Cl. No. 05-1203*

Plaintiff Blue & Fleet, L.P. ("Blue & Gold") previously filed a bid protest with this Court regarding the same solicitation and contract at issue here, and that protest was decided by Judge Miller in *Blue & Gold Fleet, L.P. v. United States*, 70 Fed. Cl. 487 (2006). Hornblower was an

intervenor in that protest.[1] Thus, both the first protest filed by Blue & Gold and this subsequent protest involve the same parties.

In addition, Blue & Gold also raised before Judge Miller the same issue which it raises in this present protest, specifically that the NPS would have to amend the contract at issue in order to ensure that the concessioner under the contract complied with the Service Contract Act ("SCA"). For example, in that proceeding before Judge Miller, Blue & Gold stated:

> The contract is clearly subject to the SCA. *See* Ex. 18 (DOL determination that shuttle bus transportation services under NPS concession contract are "SCA covered as they [are] outside the scope of the limited exemption provided in [29 C.F.R. 4.133(b).
>
> Because the SCA applies, [redacted] since the services are currently being provided by employees covered by collective bargaining agreements (CBAs), any successor contractor must pay no less than the wages and benefits contained in those agreements. 41 U.S.C. 353(c). [Hornblower's] proposed costs failed [redacted] and thus further understated the costs that [Hornblower] would incur.

Blue & Gold's Memorandum In Support Of Plaintiff's Motion for Judgment on the Administrative Record at 34 (December 23, 2005)(Dkt. # 50). Blue & Gold then subsequently asserted in further pleadings:

> The draft contract included in the prospectus requires that the contractor comply with all applicable laws relating to employment. [] One of these applicable laws is the SCA.
>
> . . .
>
> [Hornblower] contends that if the SCA applies, all can be cured with a post-award contract amendment. [] Of course, [Hornblower] fails to acknowledge that (1) NPS selected it for award based in part on a cost realism evaluation that failed to take the SCA requirements into account [], (2 ) the amendment [Hornblower] posits is improper [], and (3) the applicability of the SCA would destroy

---

[1] Blue & Gold has filed an appeal of that decision to the United States Court of Appeals, which is currently pending. *Blue & Gold Fleet, L.P. v. United States*, No. 2006-5064.

> [Hornblower's] proposed ability to pay the high franchise fee it proposed and break even on the contract.

Plaintiff's Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment On The Administrative Record and Reply In Support Of Plaintiff's Motion For Judgment On The Administrative Record at 24, 27 (January 31, 2006)(Dkt. # 129). Blue & Gold further asserted before Judge Miller that, with respect to any change in the contract to reflect the applicability of the SCA, 36 C.F.R. § 51.19 stated that "NPS '*must not award* a concessions contract which materially amends … the terms and conditions of the concessions contract as set forth in the prospectus.'" *Id.* at 27, n. 36 (emphasis added).

In its present protest and as an apparent effort to have its new protest appear different than its prior protest, Blue & Gold cites to 16 U.S.C. § 5952(4)(D) as being the basis for its protest. Complaint at ¶ 1. However, the federal regulation cited by Blue & Gold in its prior protest before Judge Miller, 36 C.F.R. § 51.19, implements 16 U.S.C. § 5952(4)(D). Moreover, both provisions set forth the exact same legal criteria. *Compare* 16 U.S.C. § 5952(4)(D)("[NPS] may not execute a concessions contract which materially amends . . . the terms and conditions of the concessions contract as set forth in the applicable prospectus" *with* 36 C.F.R. § 51.19 ("[NPS] must not award a concession contract which materially amends … the terms and conditions of the concession contract as set forth in the prospectus"). Thus, the legal criteria upon which Blue & Gold bases its latest protest (*see* Complaint ¶ 1) *is the same legal criteria* it previously cited to Judge Miller in its prior protest and pertains to the exact same issue (*i.e.*, whether NPS can properly amend the contract to incorporate the terms of the SCA).[2]

[2] To the extent that Blue & Gold may assert that its current protest is distinguished from

Finally, in its motion for an injunction pending its appeal of this Court's denial of its bid protest, Blue & Gold again reiterated its assertion that the SCA applies to the Alcatraz contract and that whichever party is awarded the contract will have to compensate its employees in a manner consistent with the SCA. Blue & Gold further asserted, again, that any successor contractor would necessarily have to pay no less than the wages and benefits set forth under Blue & Gold's present wage agreements with its own employees. Blue & Gold then, once again, made its argument that NPS was not legally allowed to award the concession contract for services at Alcatraz Island if it intended to subsequently modify the contract to make its wage obligations consistent with the SCA. *See* Plaintiff's Motion for an Injunction Pending Appeal And For Expedited Consideration at 3, 6-7 (March 6, 2006)(Dkt. # 137). Blue & Gold's motion was denied.[3]

As shown above, the present protest filed by Blue & Gold, which challenges the award of the contract to Hornblower based on the allegation that the contract was improperly made subject to the SCA, involves the same or similar claims made by Blue & Gold in the protest decided by Judge Miller. In addition, both protests involve the same solicitation and contract for operations at Alcatraz Island.

---

its prior protest arguments based on the contract modification occurring *before* award of the contract, the precision of such a distinction being made by Blue & Gold would only further demonstrate that both cases involve very similar claims. Moreover, a determination that the Court's prior ruling somehow did not cover any pre-award modifications related to the SCA, notwithstanding its plain language as shown *infra*, would involve and require a thorough familiarity with the extensive pleadings made in that case.

[3] In addition, Blue & Gold also filed a motion for an injunction pending appeal at the Federal Circuit, which was also denied.

Thus, the present protest clearly meets the criteria set forth in RCFC 40.2(a)(1) with regard to *Blue & Gold Fleet, L.P. v. United States*, 70 Fed. Cl. 487 (2006). As shown above, Blue & Gold was simply incorrect when it did not file a Notice of Directly Related Case along with its Complaint pursuant to RCFC 40.2. Blue & Gold's action was apparently driven by the fact that it received an unfavorable ruling in the related case and it is seeking to eliminate the judge in that case from any further involvement in this matter. However, the determination of related cases should not be made on the basis of whether a party received an unfavorable decision in a related proceeding.

*Relationship to Blue & Gold Fleet, L.P. v. United States, Fed. Cir. No. 2006-5064*

Furthermore, this case is also directly related to Blue & Gold's pending appeal before the Federal Circuit of Judge Miller's decision denying its protest. At the core of Blue & Gold's protest in the above-captioned matter is the allegation that NPS improperly awarded the concession contract at issue based on NPS' explicit incorporation of the preliminary injunction order issued by the District Court after evaluations of the proposals were completed. However, as demonstrated below, Blue & Gold has made those very same allegations before the Federal Circuit in its pending appeal at that court and has requested the same relief from the Federal Circuit as it requests in the present protest, *i.e.*, termination of the contract award so that NPS can re-solicit the contract.

Specifically, Blue & Gold has stated to the Federal Circuit:

> On May 10, 2006, NPS issued a press release announcing that it had made contract award to [Hornblower] and that the awarded contract incorporated the terms of an injunction issued by the United States District Court for the Northern District of California which preliminarily enjoined NPS from awarding a contract

> to [Hornblower] unless [Hornblower] was required to pay wages and benefits at levels no less than that required by the SCA. Thus, although the action was filed and considered by the trial court as a pre-award bid protest, NPS has since made contract award to [Hornblower] and the Court may take judicial notice of that fact.

Brief of Plaintiff-Appellant Blue & Gold Fleet, L.P. at 3, n. 1 (hereinafter "Fed. Cir. Brief").

Based on this award decision, Blue & Gold then asserts in its brief to the Federal Circuit:

> By awarding [Hornblower] a contract which requires [Hornblower] to pay wages and benefits at the levels required by the SCA, NPS effectively allowed [Hornblower] to amend its proposal without affording other offerors the same opportunity and without evaluating the financial viability of [Hornblower's] proposal based on that level of wages and benefits contrary to the requirements of 36 C.F.R. § 51.15 and/or awarded a contract that did more than incorporate the draft contract and elements of [Hornblower's] proposal in violation of 36 C.F.R. § 51.19. [] Thus, as interpreted by NPS, the contract which NPS awarded to [Hornblower] violates 36 C.F.R. § 51.19 because it materially amends the terms and conditions of the contract set forth in the prospectus by requiring payment of wages at the levels required by the SCA . . . ."

Fed. Cir. Brief at 27, n. 9. Blue & Gold then continues with this argument in its appeal brief, asserting:

> Since NPS incorporated the injunction issued by the United States District Court for the Northern District of California into the contract it awarded to [Hornblower] which requires [Hornblower] pay its employees wages and benefits at the levels required by the SCA, NPS' conduct violates 36 C.F.R. § 51.15 and/or 36 C.F.R. § 51.19 instead of violating the rule prohibiting contract award while intending to later modify the contract to include SCA requirements.

Fed. Cir. Brief at 27, n. 9.

Based on these allegations, Blue & Gold then asks the Federal Circuit to "rule that NPS's decision to select [Hornblower] for contract award was arbitrary and capricious and not in accordance with law and direct NPS to terminate the contract awarded to [Hornblower]." Fed. Cir. Brief at 40-41. Therefore, Blue & Gold has placed the issue of the propriety of NPS' award of the contract, as modified by the District Court order, directly in issue in its appeal before the

Federal Circuit.[4] This is the precise same claim which is now set forth in its present protest.

*Efficient administration of justice*

In addition to this case being related to the cases discussed above, transfer of this case to Judge Miller will promote the efficient administration of justice because, as it noted in its motion to intervene, Hornblower will be submitting a motion for summary judgment based on collateral estoppel which will directly involve determining the scope of Judge Miller's prior ruling. As the decision at 70 Fed. Cl. 487 shows, Judge Miller has already ruled on the issue presented by Blue & Gold in this case, namely whether the award of the contract at issue would be proper *even if* the contractor were required to comply with the Service Contract Act. In that case, Blue & Gold's request for injunction as set forth in its Complaint requested the Court to "prohibit NPS from making award pursuant to the solicitation and [] direct NPS to reissue the solicitation, properly including the requirements of the Service Contract Act." Complaint at p. 20 (No. 05-1203)(Dkt. # 1). That case involves over 150 filings and extensive briefing. After reviewing this extensive briefing and the issues raised by Blue & Gold, Judge Miller expressly held that:

> An injunction based on the Service Contract Act would not be in the public interest. As Hornblower points out, even if subsequent decisions by the Department of Labor interpret the applicable regulations to require higher wages, the Department of Labor can apply them retroactively to the existing Park Service contract. *See* 29 C.F.R. § 4.5(c).

[4] Hornblower will also be seeking a decision from the Federal Circuit in the appeal holding that Judge Miller's underlying decision precluded Blue & Gold from subsequently challenging the contract award based on it being made subject to the Service Contract Act. Thus, any decision by this Court on this issue would potentially be in conflict with the Federal Circuit's ruling.

*Id.* at 514, n. 24.[5] Thus, Judge Miller's opinion, especially when viewed in light of Blue & Gold's allegations, addresses the very same outcome which is at the heart of Blue & Gold's present complaint, *i.e.*, the alteration of the contract to expressly include wages in a manner consistent with the SCA.

*Conclusion*

For the reasons set forth above, intervenor-applicant Hornblower Yachts, Inc. respectfully requests that the Court grant its motion to transfer this case to Judge Christine O.C. Miller.

Respectfully submitted,

s/Kevin R. Garden
Kevin R. Garden
The Garden Law Firm P.C.
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.: (703) 535-5565
Facsimile: (703)997-1330
*kevin@gardenlawfirm.com*

Counsel for Intervenor-Applicant

Dated: July 17, 2006

[5] Judge Miller's decision addressed a situation where NPS was forced, after evaluating contracts, to amend the contract pursuant to an order by the Department of Labor to pay wages consistent with the SCA. *See Blue & Gold*, 70 Fed. Cl. at 514, n.24. In the present case, NPS was forced, after evaluating the contracts, to amend the contract pursuant to an order by a District Court pursuant to a preliminary injunction to pay wages consistent with the SCA. However, there is no substantive distinction between the two situations.