**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

*Bid Protest*

| | | |
|---|---|---|
| BLUE & GOLD FLEET, L.P., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-0514 |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION OF *EX CATHEDRA* COMMENTS IN THIS COURT'S ORDER OF JULY 21, 2006**

Pursuant to RCFC 59(a)(1) and being cognizant of the Court's schedule and workload, defendant-intervenor Hornblower Yachts, Inc. ("Hornblower") very respectfully requests that the Court reconsider the *ex cathedra* assertions which it set forth in its Order dated July 21, 2006, given that, rather than provide assistance as was the intent of this Court, such assertions are likely to further prolong an already extensive and improper campaign by plaintiff Blue & Gold Fleet, L.P. ("Blue & Gold") to retain the contract at issue. While the Court apparently is of the view that Blue & Gold is a party deserving of assistance from the Court, the facts in this case demonstrate that, from the *moment* this Court issued its decision denying Blue & Gold's protest regarding the Service Contract Act ("SCA") issue, Blue & Gold has engaged in a campaign to undercut this Court's opinion and prevail on these same protest grounds nonetheless. The purpose of this well-funded campaign (which now involves two protests to GAO, two protests before this Court, and two District Court actions) is to circumvent the Court's determination that Blue & Gold's "wait and see" approach to the SCA issue was untimely and improper. Blue & Gold is seeking to achieve this circumvention through the use of other courts and forums.

Hornblower is confident that this Court never intended to encourage such improper conduct and abuse of the procurement protest process.

As is evident from an understanding of all the facts in this matter (which at this point are voluminous), Blue & Gold's post-protest efforts before all these tribunals stem from one single event- Blue & Gold's deliberate failure to timely challenge the terms of the solicitation at issue with regard to the SCA. It cannot be disputed that none of Blue & Gold's post-protest litigation efforts with regard to the SCA issue would have been necessary if Blue & Gold had not willingly and deliberately chosen to "wait and see" if it had been awarded the contract, and then only after not receiving award seek to upend the procurement process by seeking to change the terms of the solicitation at issue. These efforts have resulted in extraordinary litigation costs and expenditure of scarce resources by NPS as well as Hornblower.[1] It was this very conduct and waste of resources which the Court sought to preclude in its decision in the underlying protest wherein it invoked the untimeliness rule. However, notwithstanding this Court's determination, Blue & Gold continued to pursue this very same strategy and issue before other courts and forums in an effort to successfully pursue its improper (and original) goal of belatedly upending the procurement process in the event (and only in the event) that it was not awarded the contract.[2]

[1]In fact, the District Court denied a request to enjoin the award of the contract to Hornblower because the District Court determined that the goals of the SCA (which was the legal basis for the cause of action) were met if the contract that was awarded included SCA wages, regardless of whom it was awarded to. The SCA protects wage levels, not employers. Thus, the District Court clearly anticipated the possibility and propriety of an award of the contract to Hornblower, provided the contract complied with the terms of the District Court's preliminary injunction, which it did. As such, NPS' conduct (which, in the over two months which have passed, *no party had challenged* in the District Court case) was in no way a thwarting of the District Court's injunction.

[2]Blue & Gold's efforts, implemented through its employees and officers in the District Court action, resulted in NPS being *forced* to incorporate the District Court's preliminary injunction in the contract which was awarded in order to bring this long-standing procurement effort (which was begun in 2004) to a conclusion. Moreover, this condition of the preliminary

The very purpose of this Court invoking the utility of the rule prohibiting such untimely challenges is being negated, in fact obliterated, by Blue & Gold's continued actions. Had the Court been provided the benefit of submissions by the other parties in this case as to the history of this matter, Hornblower believes that the Court would not have agreed that Blue & Gold, upon losing the protest at issue, should be encouraged in its efforts to simply circumvent this Court's exclusive jurisdiction and obtain a *de facto* bid protest at the District Court based on an untimely challenge of the solicitation which this Court previously denied. Because of the incomplete record addressing this issue, the Court has been unknowingly induced to issue *ex cathedra* comments that assist Blue & Gold in its efforts to continue this improper assault on the procurement process and the untimeliness rule. It is Hornblower's view that the Court's strong belief in the justice and propriety of the untimeliness rule as applied to late challenges to solicitations would lead it to conclude that this rule should not be circumvented by bringing such late challenges to other forums. If such conduct is encouraged, the very purpose of imposing the untimeliness rule will be negated and the rule will become meaningless.

For the reasons respectfully set forth above, Hornblower requests that the Court modify its Order so that this Court will not be encouraging the evisceration of the untimeliness rule, and Hornblower appreciates the Court's courtesy in allowing for this opportunity to comment briefly on this issue given that the Court's position was not made evident prior to the status conference on July 20, 2006 and thus Hornblower was not provided a sufficient opportunity to shed light on the facts relevant to this particular issue.

---

injunction may be rendered moot upon a final determination by the District Court. NPS continues to hold the view that the SCA does not apply to the contract at issue, and no additional contract provisions otherwise required by the SCA were included in the contract at issue.

Respectfully submitted,

s/Kevin R. Garden

Kevin R. Garden
The Garden Law Firm P.C.
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.: (703) 535-5565
Facsimile: (703)997-1330
*kevin@gardenlawfirm.com*

Counsel for Defendant-Intervenor
Hornblower Yachts, Inc.

Dated: July 21, 2006